Read, J.
This case was reserved from Sandusky county. It comes up on a bill filed by Mary Perlee Brush, an infant, by her guardian, Platt Brush, seeking partition.
1. Of the remainder of that portion of Platt Brush’s estate, which was set off as dower to Eliza Brush, his widow, against the-heirs at law of the said Platt Brush, deceased; and,
2. Such estate as the complainant claims to inherit, with Samuel and Platt Brush, being sister and brothers of John T. Brush, as his heirs at law.
As to the first-named parcel of land, the remainder dependent upon the dower estate of Eliza Brush, widow of Platt Brush, deceased, there is no dispute; and, if it be desired, the case may be-remanded for such proceedings as the parties may agree upon, or the court order.
But as to the second, the estate of John T. Brush, deceased, the question for determination here, is, whether he left any estate undisposed of, to descend to his sister, Mary Perlee Brush, and his-brothers, Samuel and Platt Brush, as his heirs at law; and if soy what estate ?
The determination of this last question depends:
1. Upon the validity of the will of John T. Brush, executed September 21, 1840, making ^entire disposition of his whole estate to his wife and children, if any; and,
2. Upon the validity of a deed of trust, executed by John T. Brush, on October 31, 1840, operating upon the same estate; and,
*247 3. If both are valid, their construction and effect. If the deed is invalid, and the will prevails, the whole estate of John T. Brush is disposed of, and nothing remains to his heirs for partition. If the deed is valid, it remains to determine whether it operates as. an entire revocation of the will, or only in part; and if it totally destroys the will, whether any estate remains to the heirs; and, if in part only, and both will and deed stand together, whether .they entirely exhaust the estate, and leave nothing to descend at law to the heirs.
We will consider, first, of the validity of the deed :
Susan Albina Brush, widow of John T. Brush, deceased, claims, in her answer, that the whole estate is hers under the will; and that the deed of trust to Samuel Brush is invalid, because her husband, John T. Brush, at the time of its execution, was incompetent to make a deed, either from being actually insane at the time, or, at least, in such a state of mental imbecility, from drunkenness and long habits of intemperance, as to be incpable of making a contract; and that Samuel took advantage of the unfortunate situation of his brother, corruptly to procure this deed, for the purpose of revoking the will and defrauding the respondent.
To this point the whole body of the testimony in the ease has been directed. It discloses that John T. Brush had been, for many years, habitually intemperate. That the-family witnessed, with grief, its rapid advances; and felt that, unless he could be restrained, he must soon fall its victim. Every effort was made, and especially by Samuel, who spared no means to reform his brother. His kindness was reciprocated by John, who relied upon him in every time of need and distress. When their father died, in August, 1840, and a division of his estate was had among the heirs, and John came into the possession of his portion, Samuel perceived that *it would soon be swallowed up by dissipation and sharpers, who would take advantage of the intemperate situation of his brother, and rob him of his property. John had married a wife; there was promise of offspring, and a certainty that, unless something was done, poverty would soon come with dissipation, and destitution and want be added to the misery of drunkenness. To reclaim the brother, and protect his. wife, it was a family arrangement that John should move on to his farm in Seneca county. It was hoped that thus removed from *248 his evil associations, he would relorm; but, not reforming, and contracting debts, he felt himself, as well as did his friends, that he must soon be reduced to utter destitution. Samuel felt deeply upon the subject. He desired, if possible, to secure to his brother and his family a support, and provide for the wife and children, if any, in case of John’s death. He consulted with his friends ; and, upon the advice of distinguished counsel, it was concluded to take a deed of trust to Samuel, to hold the real estate of John, for the use of John and his family. In pursuance of this arrangement, John T. Brush executed a deed, dated October 31, 1840, to Samuel Brush, in trust, to pay over the rents and profits to his wife Susan Albina, for their joint support, and the support of the children ; and, in case of his death, the profits of one-half of the estate to support his widow during life, and the profits of the other half to the guardian of his children, for their support; and, in case of the death of the wife, the whole estate to go to his children.
A few days after the execution of this deed, John died of delirium tremens. He had concluded to leave off drink. Samuel had hired his brother, Platt, and paid him to go to John’s and take care of him, whilst he made the effort to leave off liquor. Delirium tremens was the consequence.
Nothing is disclosed by the proof, to show in Samuel anything but the conduct of a kind and affectionate brother. Indeed, the whole evidence shows that Samuel, throughout, was actuated, in his conduct toward his brother and wife, by the most praiseworthy motives; and we are happy to be able to *add, that so far from any fraud being imputable to him in the procurement of the deed, the evidence bears much honorable testimony of the pure considerations and affection which have governed him in this whole transaction.
But was John of sufficient mental capacity to make this deed ? The proof shows that, at the time he made the deed, he was as capable of doing business as he had been for months; that he understood his interests at the time, and conducted business as usual. True, some say that thoy would not trust him to do business for them; but who would trust an intemperate man with business of¿ importance ? But certainly he may be permitted to contract for his own benefit, to secure his properly to himself and family.
The very nature of the deed, as well as the proof, show that the *249 protection of John’s interest, and to prevent his estate from being squandered, was the object in the execution of this deed. We regard this deed, then, as valid.
Does it revoke the will?
The will bequeaths all his property, both real and personal, of which he may die possessed, either in law or equity, to his wife, Busan Albina; but in case of children, the one-half to go to them, and the other half to the wife. No child was born alive, to take under the devise, and the contingency not happening, the will vests the whole estate in the wife. This will bears date September 21, 1840.
The deed differs from the will. The will gives the widow the whole estate, if there be no children; and, at all events, the fee -of one-half. The deed secures her only a life estate in the one-half. If the deed had disposed of the whole estate, it would revoke the will.
The contingency failing to happen, which would have vested the rest in the heir, and carried the entire estate, the trust results in favor of the grantor, to be inherited by his heirs; and hence, a portion of the estate is left undisposed of by the deed, to descend as at law.
*The act relating to wills in sections 37 and 38, Swan’s Btat. 997, provides that a conveyance, settlement, deed, or other act of the testator, by which his estate, or any interest in property, previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise; but such devise or bequest shall pass to the devisee or legatee the actual estate or interest of the testator, which would otherwise descend to his heirs or pass to the next of kin, unless, in the instrument by which such alteration was made, the- intention is declared that it shall operate as a revocation of such previous bequest or devise. So, in section 38, it is provided that when there is a total disposition of the property, it shall operate as a revocation, unless it be upon a condition or contingency, and such condition bo not performed, or such contingency do not happen.
Thus, when there is a will devising the whole estate, and a subsequent conveyance or deed which does not divest the whole estate, it does not revoke the will, but the devise operates pro tanto upon that portion not divested.
The rule is this: If the will conveys the whole estate, and the *250 subsequent disposition, by deed or otherwise, does not transfer the-, whole estate, but leaves a portion which would descend as at law, the devise attaches to such descendible portion, and carries it to the devisee.
S. Brush and G. Swan, for complainants.
B. P. Buckland, for defendants.
Now, in this case, the heirs of John T. Brush,'his sister and brothers, claim, as heirs at law, the one-half of the estate conveyed in trust, to be held for John’s children, if any, and the reversion in the other half dependent upon the life estate of Susan Albina.
Thus, by the deed of trust, there is one-half of the estate named in it, and the reversion of the other half undisposed of, which, if there is nothing to prevent, would descend to John T. Brush’s, heirs at law.
Thus, although the nature of the estate, by the deed of trust, was converted from a legal into an equitable estate, and, as there-was 110 express revocation of the will under the statute, *it attaches to all that portion of John T. Brush’s estate which would descend to his heirs at law, and vests it in the devisee, Susan Albina. Hence, although the deed and will are both valid, yet they dispose of the whole estate, and nothing descends to the complainant, but the whole belongs to Susan Albina, the respondent. Therefore the bill is dismissed; but, as it is the case of a minor seeking her estate, the court decree no costs.
Bill dismissed.